United States District Court
Southern District of Texas
**ENTERED**
October 30, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOE GAGGOS, JR., | § | |
|    *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:22-CV-0567 |
| | § | |
| WALMART DISTRIBUTION CENTER 7036, | § | |
|    *Defendant*. | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Court is Defendant's Motion for Summary Judgment. ECF 49.[1] Plaintiff filed a response and Defendant replied. ECF 52; ECF 53. Having considered the parties' submissions and the applicable law, the Court RECOMMENDS that Defendant's Motion for Summary Judgment be GRANTED.

**I.  Factual and Procedural Background.**

Congress has delegated the power to prescribe driver qualifications for commercial motor vehicles, and to adopt and enforce the regulations, exclusively to the Secretary of Transportation. *Williams v. J.B Hunt Transp., Inc.*, 132 F. Supp. 3d 858, 867 (S.D. Tex. 2015), *aff'd*, 826 F.3d 806 (5th Cir. 2016) ("Congress has delegated the power to prescribe driver qualifications for commercial motor vehicles and to adopt and enforce regulations, standards, and orders for commercial motor

---

[1] The District Judge referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. ECF 4.

carrier safety exclusively to the Secretary of Transportation.") (citing 49 U.S.C. § 31102(b)(1)). Pursuant to this delegated power, the Department of Transportation (DOT), through the Federal Motor Carrier Safety Administration, promulgated the Federal Motor Carrier Safety Regulations (FMCSR). *Id.* Commercial truck drivers are required to comply with all DOT commercial motor vehicle regulations, including the FMCSR. The FMCSR require drivers to pass regular DOT medical examinations which demonstrate they are physically capable of and qualified to safely operating commercial motor vehicles. 49 C.F.R. § 391.41(a)(1)(i).

Under the FMCSR, a person is not "physically qualified" to safely operate a commercial motor vehicle if he or she has a clinical diagnosis of a "respiratory dysfunction likely to interfere with his/her ability to control and drive a commercial motor vehicle safely." *Id.* § 391.41(b)(5). Sleep apnea is a disqualifying "respiratory dysfunction". *Id.* Pt. 391, App. A(E)(3). If, during a commercial driver's required medical examination, a "medical examiner detects a respiratory dysfunction[] that in any way is likely to interfere with the driver's ability to safely control and drive a commercial motor vehicle, the driver must be referred to a specialist for further evaluation and therapy." *Id.* If a medical doctor finds a person medically unqualified to be a commercial truck driver, that person must obtain a contrary opinion using the DOT's administrative process. 49 C.F.R. § 391.47.

2

Plaintiff was hired by Walmart Distribution Center 7036 on January 31, 2000 to be a truck driver. ECF 49-4 at 20-21. Plaintiff was 47 years old at the time. *Id*. Thirteen years later, in August 2013, Walmart started a cost-free sleep apnea program for its truck drivers. ECF 49-2. SleepSafe Drivers ("SleepSafe") oversees Walmart's sleep apnea benefit program. ECF 49-3 at ¶ 1. Specifically, SleepSafe contracts with Defendant Walmart to provide expedited at-home and in-lab sleep studies with doctors who are Board Certified in Sleep Medicine. *Id*. SleepSafe also provides detailed usage reports which can allow a driver to be medically cleared to drive when the reports demonstrate compliance with sleep apnea treatment. *Id.*

In April 2018, Plaintiff was diagnosed with obstructive sleep apnea and given a recommendation to use an Auto-titrating Continuous Positive Airway Pressure ("CPAP") mask to improve his sleep quality. ECF 49-7. Plaintiff attempted to use the CPAP mask but experienced continuous problems. For example, in May 2018, he reported "extreme headaches during and after usage" as well as "los[t] eyesight, weight gain, blood pressure issues, and … mental and physical decline." ECF 49-8; ECF 52 at 2. Plaintiff requested and received a new mask but continued to experience problems. ECF 49-9; ECF 49-10. Plaintiff alleges that Defendant did not follow "physician's recommendations for titration" of the CPAP machine and that Defendant "refused to calibrate the CPAP to [his] needs and mask fitting which Walmart did for other drivers." ECF 23 at 9; ECF 52 at 2.

On May 31, 2018, Plaintiff requested and was approved for a leave of absence through December 3, 2018. ECF 49-11. In July 2018, Plaintiff underwent sinus surgery to address his sleep apnea. ECF 49-4 at 58; ECF 49-14. SleepSafe then scheduled "a new study to confirm" that as a result of the surgery, Plaintiff no longer needed a CPAP mask. ECF 49-14. On July 19, 2018, Plaintiff's leave of absence was extended through May 1, 2019. ECF 49-15.

On August 21, 2018, Plaintiff's personal physician cleared him to return to work without use of a CPAP machine because the surgery corrected his sleep apnea. ECF 49-16. Thereafter, a SleepSafe physician conducted another sleep study which confirmed Plaintiff's sleep apnea diagnosis, and again recommended that Plaintiff use a CPAP machine. ECF 49-17.

Plaintiff underwent a second more extensive surgery in November 2018 to address his sleep apnea. ECF 49-4 at 58. On May 31, 2019, after a third sleep study, a SleepSafe physician concluded that despite the surgeries, Plaintiff still suffered from obstructive sleep apnea and continued to recommend use of a CPAP machine. ECF 49-18. Plaintiff then consulted his own non-SleepSafe approved provider, who opined that Plaintiff "does not require the use of CPAP." ECF 49-19. However, Plaintiff's provider acknowledged that his opinion was based on minimum criteria and that the use of different criteria could result in the requirement that Plaintiff continue to use a CPAP. *Id.*

In June 2019, Defendant Walmart approved SleepSafe "to do anything and everything to help [Plaintiff] become compliant so he can return to work." ECF 49-20. Later that month, Plaintiff underwent a fourth sleep study which again confirmed that he still suffered from sleep apnea. ECF 49-21. The SleepSafe physician recommended use of a Bilevel Position Airway Pressure ("BiPAP") machine. *Id.*; ECF 49-22.

Plaintiff returned to work from July 2019 to October 2019, using the BiPAP machine until he began experiencing problems he associated with the machine. ECF 49-4 at 86 (the machine "wreaked havoc on [his] nervous system"). On October 27, 2019, he requested and was approved for a leave of absence through May 14, 2020. ECF 49-23. Meanwhile, in November 2019, Plaintiff consulted another non-SleepSafe-approved provider and underwent an independent sleep study. ECF 49-4 at 84. After reviewing the results, the provider opined that "[t]herapy for sleep apnea [wa]s not indicated based on this study." ECF 1 at 18-20.

On April 16, 2020, Defendant's benefits provider, Sedgwick, advised Plaintiff that his approved leave of absence would exhaust on May 14, 2020. ECF 49-25. The correspondence from Sedgwick explained that Plaintiff could request an extension of his leave and provided him with information for doing so. *Id.* Plaintiff testified that he requested and was granted an extension from Sedgwick on May 14, 2020, but Defendant has no record of the request. ECF 49-4 at 89. The following

5

day, on May 15, 2020, Plaintiff was terminated. ECF 49-27. In the summary of termination, Walmart identified the reason for his termination as his failure to return from his leave of absence. *Id.*

On February 16, 2021, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging claims for age and disability discrimination. ECF 49-28. Plaintiff asserted the following factual allegations in the EEOC charge:

> I was hired in January 2000 as a Truck Driver. On or about May 31, 2018, I was taken off work by the Safety department. I was required to wear a machine due to a disability. I was not given any instructions on how to use the machine. The machine caused problems for me. I went to my doctor. My doctor sent a letter to management that I needed to be fitted. Management refused to accept my doctor and said it was doctor shopping. In July 2018, I had surgery. In November 2018, I had another surgery. On April 8, 2019, I was released to return to work. I was told by the safety manager and human resources that they did not know what to do with me. I applied for unemployment. In December 2019, I was diagnosed with a disability. On May 15, 2020, I was discharged.
>
> I was told that I was discharged for failure to return from a leave of absence. I believe I was discharged because of my age, 64, in violation of the Age Discrimination in Employment Act and denied a reasonable accommodation and discharged because of my disability, in violation of the Americans With Disabilities Act of 1990, as amended.

ECF 49-28 at 2-3. Plaintiff received a notice of right to sue from the EEOC on January 5, 2022. ECF 23 at 3.

Proceeding *pro se*, Plaintiff filed his original complaint in this Court on February 22, 2022, alleging Title VII discrimination claims against Defendant.

ECF 1. Defendant moved to dismiss, or alternatively, for a more definite statement. ECF 11. The Court granted Defendant's motion to dismiss Plaintiff's Title VII claims for failure to state a claim and ordered Plaintiff to file an amended complaint with regard to any claim of discrimination or retaliation under the Age Discrimination in Employment Act ("ADEA") or the Americans with Disabilities Act ("ADA"). ECF 21; ECF 22.

On November 15, 2022, Plaintiff filed an Amended Complaint asserting claims for age discrimination, disability discrimination, and retaliation under the ADEA and ADA. ECF 23. Defendant filed a Motion for Summary Judgment on August 14, 2023. ECF 49. Plaintiff filed a response. ECF 52.[2] Defendant replied in support of its motion. ECF 53.

## II. Summary Judgment Standard.

A party is entitled to summary judgment under Federal Rule of Civil Procedure 56 if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law, while a dispute about that fact is genuine if the evidence is such that a reasonable

---

[2] Although Plaintiff's filing is captioned as a Motion for Summary Judgment, the Court has construed the filing as Plaintiff's response to Defendant's Motion for Summary Judgment. ECF 60.

jury could return a verdict for the nonmoving party." *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 824 (5th Cir. 2022) (internal quotation marks omitted).

The moving party "always bears the initial responsibility of demonstrating the absence of a genuine issue of material fact." *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (alterations omitted). When the movant would not bear the burden of persuasion at trial, he may satisfy his initial summary judgment burden "by pointing out that the record contains no support for the non-moving party's claim." *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019). If the moving party satisfies his initial burden, the nonmovant "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Jones*, 936 F.3d at 321.

### III. Analysis.

Defendant moves for summary judgment on Plaintiff's ADEA, ADA and retaliation claims, arguing that: (A) All of Plaintiff's complaints based on events other than his termination are time-barred; (B) Plaintiff failed to exhaust administrative remedies as to any retaliation claim; (C) Plaintiff has failed to show a prima facie case of age or disability discrimination; and (D) even assuming Plaintiff could establish a prima facie case, he has failed to present evidence of pretext. ECF 49 at 6-7. The Court addresses Defendant's arguments in turn.

### A. Any discrimination or retaliation claims based on events prior to April 22, 2020, are time-barred.

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA also makes it unlawful for employers to retaliate against an individual "for opposing acts of age discrimination, or for charging, testifying, assisting, or participating in any manner in an investigation, proceeding, or litigation under the ADEA." *Holt v. JTM Indus., Inc.*, 89 F.3d 1224, 1225 (5th Cir. 1996) (citing 29 U.S.C. § 623(d)). Similarly, the ADA prohibits employers from "discriminating against a qualified individual on the basis of disability" or retaliating against an individual who "has opposed any act or practice made unlawful" by the ADA. 42 U.S.C. §§ 12112(a), 12203(a).

Before a claimant can pursue employment discrimination or retaliation claims in federal court, he must first exhaust available administrative remedies by filing a charge with the EEOC. 29 U.S.C. § 626(d) (ADEA); *Melgar v. T.B. Butler Publ'g Co., Inc.*, 931 F.3d 375, 378 (5th Cir. 2019) (citation omitted). In a "deferral state" such as Texas, a plaintiff must file his charge with the EEOC within 300 days after the alleged unlawful action occurred. 29 U.S.C. § 626(d)(1); 42 U.S.C. § 2000e-

5(e)(1);[3] *Simotas v. Kelsey-Seybold*, 211 F. App'x 273, 275 (2006) (citation omitted). Consequently, claims of discrimination or retaliation based on conduct that occurred more than 300 days before the plaintiff filed an EEOC charge are time-barred. *See Porto v. Chevron NA Expl. & Prod. Co.*, No. CV H-17-1419, 2018 WL 3559103, at *8 (S.D. Tex. July 24, 2018) (explaining that such claims "are timely only if they occurred within the limitations period").

In this case, Plaintiff filed his EEOC charge on February 16, 2021. ECF 49-28. April 22, 2020 is the date 300 days prior to February 16, 2021. Thus, any discrimination or retaliation claim based on conduct that occurred before April 22, 2020, is time-barred. While many of Plaintiff's allegations in both the Amended Complaint and the EEOC charge date back to 2018 and 2019, Plaintiff's termination on May 15, 2020, occurred within the 300-day timeframe and therefore may form the basis of a discrimination or retaliation claim. Although Plaintiff may not assert claims based on events occurring prior to April 22, 2020, he is not barred "from using the prior acts as background evidence in support of [his] timely claim" for wrongful termination. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *accord Collier v. Dallas Cnty. Hosp. Dist.*, 827 F. App'x 373, 376 n.6 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 2657 (2021) ("The statutory limitations period

---

[3] The ADA incorporates the enforcement procedures of Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 12117.

does not bar an employee from using the prior acts as background evidence in support of a timely claim, which [plaintiff] does here.").

### B. With respect to his retaliation claim, Plaintiff failed to exhaust administrative remedies by filing a complaint of retaliation with the EEOC.

As mentioned above, a plaintiff must first exhaust administrative remedies by filing a charge with the EEOC before pursuing discrimination or retaliation claims in federal court. *Melgar*, 931 F.3d at 378. Whether a plaintiff has exhausted his administrative remedies is determined "not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)).

Here, Plaintiff checked only the boxes for age and disability discrimination on his EEOC charge. Furthermore, none of the factual allegations contained in the charge gave any notice to the EEOC or Defendant Walmart that Plaintiff alleged retaliation. Plaintiff's EEOC complaint neither mentions retaliation, nor alleges he was terminated after engaging in protected activity. ECF 49-28 at 2–3. For these reasons, Plaintiff's retaliation claim should be dismissed without prejudice for failure to exhaust administrative remedies. *Stanley v. Univ. of Tex. Med. Branch, Galveston, Tex.*, 425 F. Supp. 2d 816, 822–23 (S.D. Tex. 2003) ("Plaintiff's failure

11

to articulate *any facts* concerning retaliation that would have put the EEOC on notice about the possibility of such, accompanied by his failure to check the retaliation box …, are fatal to his retaliation claim.") (emphasis in original).

### C. Plaintiff's disability and age discrimination claims based on his termination must fail.

Where, as here, a plaintiff relies on circumstantial evidence, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies to ADEA and ADA claims. *Miller v. Raytheon Co.*, 716 F.3d 138, 144 (5th Cir. 2013) (ADEA cases); *Gosby v. Apache Indus. Servs., Inc.*, 30 F.4th 523, 525–26 (5th Cir. 2022) (ADA cases). Under this framework, the plaintiff must first demonstrate a prima facie case of discrimination. *Mueck v. La Grange Acquisitions, L.P.*, 75 F.4th 469, 483 (5th Cir. 2023). If the plaintiff makes a prima facie case, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions, after which the plaintiff bears the burden to prove that the employer's explanation was a pretext for discrimination." *Id.* (citation and quotations omitted).

#### 1. Plaintiff has failed to present a prima facie case of discrimination under the ADEA or ADA.

To establish a prima facie ADEA discrimination claim, Plaintiff must show that: "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by

someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, (5th Cir. 2010) (quoting *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007)). To establish a prima facie ADA discrimination claim, Plaintiff must show that: (1) he is disabled within the meaning of the ADA, (2) he was qualified for the job, and (3) he was fired on account of his disability. *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 341 (5th Cir. 2019). Thus, under either Act, "a plaintiff must prove that he was qualified for the position … at the time of his termination." *Valentine v. Varco*, 712 F. App'x 347, 349 (5th Cir. 2017) (citations omitted); *see also Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 418 (5th Cir. 2017) ("We do not question whether [plaintiff] was qualified for his job prior to taking leave, instead the question is whether he was qualified at the time of his termination.").

As explained above, to be qualified for his position as a truck driver, Plaintiff was required to comply with all DOT regulations, including passing regular DOT medical examinations showing he was physically capable of safely operating a commercial motor vehicle. 49 C.F.R. § 391.41(a)(1)(i). A plaintiff found to be medically unqualified to be a truck driver must utilize the DOT's administrative process when obtaining a contrary opinion. 49 C.F.R. § 391.47.

Defendant maintains that Plaintiff was not qualified for the position when terminated because the job description required Plaintiff to "[o]perate a tractor/trailer *safely* by adhering to *all safety requirements.*" ECF 49 at 12 (emphasis in original); ECF 49-5. Plaintiff testified that he has not felt safe to drive a truck since May 2020. ECF 49-4 at 102–03. In addition, Plaintiff has failed to submit evidence to rebut Defendant's argument or create a fact issue as to whether he was qualified to safely operate a commercial vehicle at the time of his termination.

Furthermore, the summary judgment record demonstrates that Plaintiff was repeatedly diagnosed with sleep apnea and CPAP sleep therapy was recommended to treat the sleep apnea. ECF 49-17; 49-18; 49-21. Plaintiff's evidence demonstrates that a non-SleepSafe provider opined he did not need therapy for his sleep apnea. ECF 1 at 19. However, the conflicting medical opinions required Plaintiff to "file[] an application with the DOT to resolve any conflict between medical evaluations pursuant to § 391.47." *Bills v. Wal-Mart Stores East LP*, No. 4:21-CV-00024, 2022 WL 389915, *7 (E.D. Tex. Feb. 8, 2022). Courts in the Fifth Circuit and elsewhere have found that a driver cannot establish a prima facie case of discrimination if "a doctor finds the plaintiff medically unqualified and the plaintiff does not obtain a contrary opinion through the DOT's administrative process." *Id.* (quoting *Williams v. J.B. Hunt Transp., Inc.*, 826 F.3d 806, 811 (5th Cir. 2016)). Plaintiff has failed to demonstrate that he pursued the DOT's administrative process, a failure which is

fatal to his claim. *See Bills*, 2022 WL 389915, at *7 ("Thus, even with inconsistent physician opinions and MECs in the record, Bills' failure to put forth any evidence showing that he attempted to obtain a contrary opinion through the DOT's administrative process is fatal to his claim.").

Because Plaintiff has failed to show that he was qualified for his position, he has not met his burden to establish a prima facie case of discrimination under the ADEA or ADA.[4]

> **2. Defendant has articulated a non-discriminatory reason for Plaintiff's termination which Plaintiff has not shown to be pretextual.**

Even if Plaintiff had established a prima facie case of discrimination, his claims are still subject to dismissal on summary judgment because Defendant has articulated a legitimate, non-discriminatory reason for discharge: Plaintiff's failure to return from his approved leave of absence. Defendant has presented summary judgment evidence demonstrating that Plaintiff was terminated because he failed to return to work on May 15, 2020, the day after his approved leave ended. ECF 49-27. Since termination based on Plaintiff's failure to return from leave is a legitimate, non-discriminatory reason for his termination, the evidentiary burden shifts back to

---

[4] Because Plaintiff's failure to show he was qualified means he cannot establish a prima facie case, the Court need not reach Defendant's argument contending Plaintiff has not shown he was terminated because of his age or disability.

15

Plaintiff and requires him to show that Defendant's asserted reason is pretext for discrimination.

Pretext can be established "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 480 (5th Cir. 2016) (citation omitted). Plaintiff must present "substantial evidence" of pretext. *Owens*, 33 F.4th at 826 (citation omitted). "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded triers of fact in the exercise of impartial judgment might reach different conclusions." *Id.* (alterations omitted) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 579 (5th Cir. 2003)).

Plaintiff testified that the day before his leave was set to expire, he called Sedgwick, Defendant's benefits provider, and requested and was granted an extension of his leave until May 26, 2020. ECF 49-4 at 89. According to Defendant, Sedgwick's records do not reflect an extension of Plaintiff's leave or that Plaintiff made the phone call. ECF 49 at 15. Additionally, Plaintiff has presented no evidence demonstrating that Defendant knew of the purported extension. *Id.* Therefore, assuming Sedgwick approved additional leave, no evidence demonstrates that Defendant was aware of the extension when it terminated Plaintiff. Because nothing in the record demonstrates that Defendant knew Plaintiff's leave was extended, Plaintiff has failed to demonstrate his termination was pretext for

16

discrimination. *See Stephens v. City of Austin*, No. 1:12-CV-659-DAE, 2014 WL 3784267, at *1 (W.D. Tex. July 31, 2014) ("Pretext is more than a mistake on the part of the employer; it is a phony excuse.") (citation omitted).

Plaintiff has also failed to put forth any evidence of disparate treatment to support a claim of pretext. As for his age discrimination claim, Plaintiff testified that no one made comments about his age. ECF 49-4 at 67–68. He has neither alleged nor demonstrated that he was replaced by a younger, similarly situated employee. As for his disability discrimination claim, Plaintiff testified that some of Defendant's employees discriminated against him by not calibrating the CPAP machine to his needs. ECF 49-4 at 71–72, 76–77. However, at the summary-judgment stage, Plaintiff's evidence must "permit a reasonable inference that the real reason [for his termination] was impermissible discrimination." *Owens*, 33 F.4th at 834. Plaintiff has not presented any evidence that would permit a reasonable inference that the reason for his termination was discrimination and not his failure to return from leave. Therefore, Defendant's motion for summary judgment on Plaintiff's age and disability discrimination and retaliation claims should be granted.

Finally, even if the Court construed Plaintiff's response as an affirmative motion for summary judgment, Plaintiff failed to carry his summary judgment burden as a movant. *See* ECF 60; *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021) ("When the [summary judgment] movant also carriers the burden

of proof at trial, … his burden is even higher; he must establish beyond peradventure *all* of the essential elements of the claim.") (emphasis in original) (citation omitted).

### IV. Conclusion and Recommendation.

For the reasons discussed above, the Court RECOMMENDS that Defendant's Motion for Summary Judgment (ECF 49) be GRANTED.  Plaintiff's retaliation claim should be DISMISSED WITHOUT PREJUDICE and Plaintiff's discrimination claims should be DISMISSED WITH PREJUDICE.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(C).  Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on October 30, 2023, at Houston, Texas.

Christina A. Bryan<br>
United States Magistrate Judge